UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

HENRY LEIVA MURILLO,

        Plaintiff,

    v.

WARDEN FLORIDA SOUTH SIDE
DETENTION CENTER,
SECRETARY KRISTI NOEM,
ATTORNEY GENERAL PAM
BONDI,  FIELD OFFICE
DIRECTOR MIAMI FIELD
OFFICE, U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT,

        Defendants.

Case No. 2:26-cv-578-KCD-NPM

/

## **ORDER**

Petitioner Henry Leiva Murillo has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He claims that his continued detention violates the Fifth Amendment, the *Accardi* Doctrine, and the Administrative Procedure Act ("APA"). (*Id.* at 7-10.) Respondents oppose the petition. (Doc. 11.) For the reasons below, the petition is **DENIED**.

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

## I. Background

Murillo, a Honduran citizen, illegally entered the United States in 2000. (Doc. 11-1 at 2.) He was removed but crossed the border again in 2005. (*Id.* at 3.) Immigration and Customs Enforcement ("ICE") eventually apprehended Murillo, reinstated his removal order, and deported him. (*Id.*) He returned in 2024 and U.S. Citizenship and Immigration Services ("USCIS") issued a notice that it had placed Murillo's case under deferred action, which is "an administrative choice to give some cases lower priority for removal." (Doc. 1-1 at 3.) "Therefore," the notice states, "USCIS does not anticipate instituting action for removal at this time." (*Id.*) The notice further provides that "[d]eferred action will remain in effect for a period of 15 months from the date of this notice, unless terminated earlier by USCIS for reasonable cause and upon appropriate notice." (*Id.*) Thus, by its terms, Murillo's deferred action expired on March 11, 2026. Murillo was also placed on supervision, which separately expired on January 1, 2026. (*Id.*)

On February 17, 2026, the U.S. Department of Homeland Security ("DHS") reinstated Murillo's May 10, 2000, removal order and took him into custody. (Doc. 11-1 at 1-3, 7.) This habeas case followed.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of

2

the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

#### A. *Zadvydas*

Murillo first claims that he is being held in violation of the Fifth Amendment. (Doc. 1 at 7.)  In *Zadvydas v. Davis*, the Supreme Court held that indefinite detention of aliens raises serious constitutional concerns and can violate the Fifth Amendment. 533 U.S. 678 (2001). Once an order of removal is final, the *Zadvydas* Court explained, ICE should make every effort to remove the alien within a reasonable time. *Id.* at 701. Further, the Court concluded that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the Government to provide evidence sufficient to rebut that showing. *Id.* Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Murillo's petition is premature because he has not been detained for longer than six months. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any substantive due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Murillo also seems to claim that the Government's decision to revoke his supervision and return him to custody is a separate substantive due process violation. (Doc. 1 at 7.) But that argument rests on a faulty premise.

4

There is no substantive right to remain free on an order of supervision. Release on an order of supervision is a matter of administrative grace born of logistical necessity, not a permanent constitutional entitlement. Murillo assumes that as long as he complies with his conditions and stays out of trouble, the Government's hands are tied. (*Id.*) But as explained below, that is not correct. The core purpose of post-removal-order detention is to effectuate the removal order. When the Government determines that circumstances have changed—like charting a new path to removal—it has the statutory and regulatory authority to revoke a noncitizen's supervision and finish the job, regardless of his prior compliance. *See* 8 C.F.R. §§ 241.4(l), 241.13(i).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal order and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate

immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Murillo cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is subject to a final removal order that stands uncontested. The INA explicitly authorizes a return to detention to effectuate such orders. Under the rules, ICE may revoke a noncitizen's release to effectuate removal. 8 C.F.R. § 241.13(i)(2). And the Government no doubt has a legitimate interest in doing exactly that—enforcing its laws, ensuring individuals do not flee, and protecting the public. *See Malam v. Adducci*, 469 F. Supp. 3d 767, 790 (E.D. Mich. 2020). Here, ICE revoked Murillo's release specifically to enforce his outstanding removal order. Returning him to custody thus serves a recognized, legitimate government objective.

### B. Procedural Due Process & the *Accardi* Doctrine

Murillo next presses procedural due process and *Accardi* doctrine claims. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). (Doc. 1 at 7-8). For starters, it's not entirely clear that Murillo is entitled to a freestanding due process analysis at this time. When the Supreme Court

6

confronted the constitutional perils of indefinite immigration detention in *Zadvydas*, it did not instruct lower courts to start weighing the process afforded to the detainee. It set a timer. For the first six months, detention is presumptively reasonable. *Zadvydas*, 533 U.S. at 701. So until that timer goes off, *Zadvydas* itself seemingly supplies the constitutional metric. *Martinez v. Larose*, 968 F.3d 555, 566 (6th Cir. 2020). "In other words, the *Zadvydas* standard *is* due process: a § 1231 detainee who fails the *Zadvydas* test fails to prove a due process violation." *Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024). Because Murillo's detention is barely out of the starting gate, he is presumably not yet entitled to anything more.

But even if we assume the due process clause applies with full force, Murillo still comes up empty. Both claims are based (as best the Court can tell) on Murillo's deferred action status. He argues that ICE failed to follow its own procedures for deferred action beneficiaries, including an individualized determination of changed circumstances. Indeed, the premise of the *Accardi* doctrine is that "an agency must abide by its own regulations." *Chevron Oil Co. v. Andrus*, 588 F.2d 1383, 1386 (5th Cir. 1979).

We need not spend much time on the deferred action issue. As the Government points out, because more than 15 months have elapsed since the December 11, 2024, notice, Murillo has no deferred action status. Thus, any

7

arguments on this issue are moot. Murillo has offered nothing to the contrary, despite an opportunity to do so.

Murillo also alleges that ICE violated its own procedures for revoking his supervision by failing to provide him notice before they detained him for removal. (Doc. 1 ¶ 38.) First, the INA guarantees a noncitizen the opportunity to respond to the reasons for revocation, but it nowhere promises advance warning or a pre-arrest hearing. Executing the arrest first and providing the necessary notice and procedural machinery afterward is entirely consistent with the regulatory text. *See* 8 C.F.R. §§ 241.4, 241.13(i)(3) ("*Upon revocation*, the alien will be notified of the reasons for revocation of his or her release." (emphasis added).)

At its core, the Due Process Clause demands that before the government strips a person of a protected liberty interest, it must provide notice and a meaningful opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). "Due process requires notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010).

In the context of revoking a noncitizen's supervised release, ICE's regulations strike that constitutional balance by guaranteeing written notice that allows the individual to respond. *See* 8 C.F.R. §§ 241.4(l)(1), 241.13(i).

8

Murillo received notice and was given the opportunity to make a statement contesting the determination to reinstate his prior removal order. (*See* Doc. 11-1 at 7-8.) He seemingly got exactly what the Fifth Amendment requires in this context—fair notice and a meaningful opportunity to be heard. *See Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

Murillo's argument that his clean supervision record precludes ICE from revoking his supervision also fails. He is subject to a final removal order. As explained, the INA explicitly authorizes a return to detention to effectuate such orders. The Constitution guarantees a fair process, not a favorable result. Because ICE afforded Murillo the requisite notice and a meaningful opportunity to be heard, his procedural due process claim fails.

### C. Administrative Procedure Act

Finally, Murillo brings an APA claim. The difficulty here is twofold. First, he has alleged these claims in a habeas petition, which is the wrong vehicle for the job. The writ of habeas corpus exists to challenge the fact or duration of physical confinement. It is not a catch-all funnel for standard administrative grievances. Trying to shoehorn a freestanding APA challenge into a habeas petition simply does not work. *See Fleurimond v. Noem*, No. CV-26-00037-PHX-MTL (CDB), 2026 WL 507542, at *3 (D. Ariz. Feb. 24, 2026). A habeas petition comes with a streamlined procedure, fast-tracked rules, and a nominal filing fee. An APA challenge, by contrast, is a standard

civil action with a heftier filing fee and following the ordinary, more deliberate pace of the Federal Rules of Civil Procedure. Litigants cannot sidestep those standard requirements by simply slapping a habeas label on an administrative complaint. *See Alvarez v. Noem*, No. 5:26-CV-0013-JKP, 2026 WL 93972, at *7 (W.D. Tex. Jan. 9, 2026); *Richmond v. Scibana*, 387 F.3d 602, 606 (7th Cir. 2004) (recognizing legal distinction between habeas cases and civil actions brought under APA, which have different filing fees and exhaustion provisions).

Second, the APA itself leaves no room for such claims. The APA operates as a fallback option, providing a right of judicial review only when "there is no other adequate remedy in a court." 5 U.S.C. § 704. But Murillo has an adequate remedy—the very habeas petition he filed to get through the courthouse doors. *See Trump v. J.G.G.*, 604 U.S. 670, 674 (2025) (Kavanaugh, J., concurring). Because the writ of habeas corpus provides a fully adequate avenue to test the legality of his custody—which is the only thing Murillo is challenging here—the APA simply leaves no room for these redundant claims. *See Fleurimond*, 2026 WL 507542, at *3, *Rivera v. Noem*, No. 1:25-CV-01289 KWR-KBM, 2026 WL 381309, at *7 (D.N.M. Feb. 11, 2026).

## IV. Conclusion

Murillo's legal challenge to the length of his detention is premature, and his other claims fail on the merits, so the habeas petition must be

10

**DENIED**. However, this denial is without prejudice to Murillo refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on May 6, 2026.

Kyle C. Dudek
United States District Judge